UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| JOHN STEVENSON LEWIS, | \* | CIV. 11-4059 |
| | \* | |
| Petitioner, | \* | |
| | \* | REPORT and RECOMMENDATION |
| -vs- | \* | |
| | \* | |
| DARIN YOUNG, Warden,[1] | \* | |
| and MARTY JACKLEY, Attorney General | \* | |
| State of South Dakota, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Petitioner (Lewis) has filed a *pro se* Petition for Habeas Corpus pursuant to 28 U.S.C. §

2254. He has been granted *in forma pauperis* status. The Respondents have filed a Brief in response

to Lewis's Petition for Habeas Corpus (Doc. 7). Lewis has filed a Traverse (Doc. 12) and a Brief

in Support of his Traverse (Doc. 13). Lewis filed an Amendment (Doc. 14). The Government filed

a Response to the Amendment (Doc. 16) and Lewis filed a Reply (Doc. 17). Additionally, the Court

has been provided with the records from the state court proceedings, including the underlying

criminal file, the direct appeal, and state habeas proceedings.[2]

## JURISDICTION

Lewis was convicted in Minnehaha County, South Dakota and is currently incarcerated

pursuant to a judgment of a South Dakota state court. These proceedings were referred to the

---

[1]Darin Young became the Warden of the South Dakota State Penitentiary on May 24, 2013.
He has been substituted as the named Defendant in this action pursuant to Fed. R. Civ. P. 24(d).

[2]The Court has been provided transcripts from the underlying state proceedings, including
the criminal trial, the sentencing hearing, and the habeas evidentiary hearing. References to the
transcript from the criminal trial transcript will be by "TT." References to the sentencing transcript
will be by "ST." References to the habeas evidentiary hearing will be by "HT."

Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Judge Schreier's standing order dated March 18, 2010. The pending matter is therefore properly before this Court pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

On February 18, 2004 Lewis was charged in a thirteen count Indictment in Minnehaha County, South Dakota. The Indictment alleged:

Count 1:     Attempted murder in violation of SDCL §§ 22-4-1 and 22-16-4;
Count 2:     Attempted murder in violation of SDCL §§ 22-4-1 and 22-16-4;
Count 3:     Aggravated assault on a law enforcement officer in violation of SDCL § 22-18-1.1(3);
Count 4:     Aggravated assault on a law enforcement officer in violation of SDCL § 22-18-1.1(3);
Count 5:     Commission of a felony while armed with a firearm in violation of § 22-14-12;
Count 6:     Commission of a felony while armed with a firearm in violation of § 22-14-12;
Count 7:     Possession of a controlled weapon in violation of SDCL § 22-14-6;
Count 8:     Possession of a controlled substance in violation of SDCL § 22-42-5;
Count 9:     Grand theft by being in possession of stolen property (motor vehicle) in violation of SDCL §§ 22-30A-7 and 22-30A-17;
Count 10:    Grand theft by being in possession of stolen property (weapons from Scheel's Sporting Goods) in violation of SDCL §§ 22-30A-7 and 22-30A-17;
Count 11:    Grand theft by being in possession of stolen property (weapons from Ace Hardware) in violation of SDCL §§ 22-30A-7 and 22-30A-17;
Count 12:    Grand theft by being in possession of stolen property (weapons from Exchange Pawn Shop) in violation of SDCL §§ 22-30A-7 and 22-30A-17;
Count 13:    Grand theft by being in possession of stolen property (weapons from Eastside Pawn Shop) in violation of SDCL §§ 22-30A-7 and 22-30A-17.

*See* CR 04-810, Minnehaha County, Second Judicial Circuit, South Dakota. Lewis was also charged with a Part II Information, alleging he was a habitual offender. After a four day trial in September, 2004, a jury convicted Lewis on all thirteen counts. On November 4, 2004, a separate jury convicted Lewis on the habitual offender charge. On November 24, 2004, Judge Gene Paul Kean sentenced Lewis as follows:

Count 1:     Life in prison without parole; to run concurrently to Count 2 and consecutively to Count 13;
Count 2:     Life in prison without parole to run concurrently with Count 1 and consecutively to Count 13;

| Count 3: | no sentence imposed; |
| Count 4: | no sentence imposed; |
| Count 5: | no sentence imposed; |
| Count 6: | no sentence imposed; |
| Count 7: | Ten years imprisonment with credit for time served; |
| Count 8: | Ten years imprisonment, consecutive to Count 7; |
| Count 9: | Twenty-five years imprisonment, consecutive to Count 8 |
| Count 10: | Twenty-five years imprisonment, consecutive to Count 9; |
| Count 11: | Twenty-five years imprisonment, consecutive to Count 10; |
| Count 12: | Twenty-five years imprisonment, consecutive to Count 11; |
| Count 13: | Twenty-five years imprisonment, consecutive to Count 12. |

In total Judge Kean sentenced Lewis to two concurrent life sentences plus 145 years.[3] Lewis filed a direct appeal. The sole issue Lewis raised on direct appeal was whether there was sufficient evidence to sustain his convictions. On November 9, 2005, the South Dakota Supreme Court affirmed Lewis's conviction. *State v. Lewis*, 706 N.W.2d 252 (S.D. 2005). On May 12, 2006, Lewis filed a *pro se* Application for Writ of Habeas Corpus in state court. *Lewis v. Weber*, Civ. 06-1650, Second Judicial Circuit, Minnehaha County, South Dakota. On September 23, 2009, Lewis's appointed counsel filed an Amended Application for Writ of Habeas Corpus. Lewis raised the following issues in his Amended Application:

1.  Ineffective Assistance of Counsel:
    A.  Failure to move to sever Counts 1-9 from Counts 10-13;
    B.  Failure to request removal of the firearms from the courtroom during the trial;
    C.  Failure to prepare and send a juror questionnaire prior to trial;
    D.  Failure to consult with or call an expert witness at trial;
    E.  Agreeing to the release of Exhibit 1 (firearm) before appeals were complete;
    F.  Failure to file a motion to suppress evidence regarding search of the storage unit or the taking of gun shot residue from Lewis's hands without a warrant;
    G.  Failure to spend adequate time meeting with Lewis before trial;
    H.  Failure to adequately investigate the charges which formed the basis for Lewis's habitual offender conviction;
    I.  Failure to raise more issues on appeal and failure to timely file a reply brief on appeal;
2.  Cruel and Unusual punishment in violation of the Eighth Amendment.

---

[3]Judge Kean wondered aloud during the sentencing hearing how Lewis could possibly serve a term of years consecutive to a mandatory life sentence without parole. Lewis retorted, "I'm a Buddhist, your honor." ST at 15.

The Honorable William Srstka presided over Lewis's state habeas proceedings. An evidentiary hearing was held on March 12, 2010. On May 14, 2010, Judge Srstka issued a Letter Opinion denying Lewis's state habeas claims. Findings of Fact and Conclusions of Law were entered on June 30, 2010. Judge Srstka denied Lewis's Motion for Certificate of Probable Cause on July 21, 2010. The South Dakota Supreme Court denied Lewis's Motion for Certificate of Probable Cause on December 10, 2010. Thereafter, Lewis timely filed his Petition for Habeas Corpus Pursuant to § 2254 with this Court. Lewis raises the following issues in his § 2254 Petition:

1. Ineffective Assistance of Counsel:
   A. Failure to move to sever Counts 1-9 from Counts 10-13;
   B. Failure to request removal of the firearms from the courtroom during the trial;
   C. Failure to prepare and send a juror questionnaire prior to trial;
   D. Failure to consult with or call an expert witness at trial;
   E. Agreeing to the release of Exhibit 1 (firearm) before appeals were complete;
   F. Failure to file a motion to suppress evidence regarding search of the storage unit or the taking of gun shot residue from Lewis's hands without a warrant;
   G. Failure to spend adequate time meeting with Lewis before trial;
   H. Failure to adequately investigate the charges which formed the basis for Lewis's habitual offender conviction;
   I. Failure to raise more issues on appeal and failure to timely file a reply brief on appeal;
2. Cruel and Unusual Punishment in Violation of the Eighth Amendment
3. Violation of the Sixth Amendment right to Counsel by the State's interference with Lewis's ability to hire counsel of his own choice.[4]

The matter has been fully briefed and is now ripe for decision.

## FACTUAL BACKGROUND[5]

On February 2, 2004, two Sioux Falls police officers were patrolling storage units on the north end of town. Break-ins had been reported in the area, and the officers were looking for suspicious activity. Officers Iverson and Reitmeier came upon a black pick-up truck parked near an open storage facility. Lewis was trying to close the door to the storage facility, but was having

_____

[4]This issue was raised by Lewis's Motion to Supplement (Doc. 14) which was granted by the Court's Order dated May 29, 2012 (Doc. 15).

[5]The facts are gleaned from the state court file and transcripts and the published opinion of the South Dakota Supreme Court, State v. Lewis, 706 N.W. 2d 252 (S.D. 2005).

trouble because of accumulated snow and ice. Officer Reitmeier called dispatch to report the officers' encounter but could not read the license plate on the black truck because it was covered with snow. Reitmeier exited the patrol car, wiped the snow from the license plate, and called the plate number in to dispatch. Simultaneously, Officer Iverson talked with Lewis about the earlier break-ins and asked Lewis for identification. Lewis said he did not have any identification but asked why the officers were "harassing" him. Iverson observed a shotgun in the pick-up. Lewis told the officers the shotgun was for protection.

Iverson asked Lewis if he had any other weapons. Lewis indicated he did not. Nevertheless, Iverson told Lewis he intended to perform a "pat down" search to check him for weapons. Lewis attempted to flee, pushing Officer Reitmeier in the process. Reitmeier grabbed Lewis, a struggle ensued, and the situation deteriorated quickly. Soon all three men were on the ground, but Lewis continued to resist the officers. The officers were able to get Lewis's left wrist handcuffed, but his right hand remained free and the officers could not get him under control. During the struggle, a gunshot was fired. Reitmeier indicated the shot went past his head. The officers realized the shot came from underneath them, as they smelled gunpowder and saw a puff of smoke. As the struggle with Lewis continued, Reitmeier saw a silver pistol in Lewis's hand. Lewis repeatedly threatened to pull the trigger again.

Because Lewis continued to struggle and the officers were unable to control him, Iverson instructed Reitmeier to return to the patrol car for safety. As soon as Reitmeier was out of the melee, Iverson got up, pushed off of Lewis, and also ran away from Lewis. Iverson turned to see Lewis who by then had squared his body to the officers. Both Reitmeier and Iverson fired shots at Lewis. Reitmeier fired three shots; Iverson, who was unaware exactly where Reitmeier was, fired two shots. One of the officers' shots hit Lewis in the side and exited his body. The other shot hit a pistol which Lewis had holstered underneath his shoulder.[6] Six bullets were recovered from the scene. Five were

---

[6]It was ultimately discovered that in addition to the shotgun in the pick-up, Lewis had three guns in his possession: two were holstered (one under each shoulder) and the third was the silver pistol in his hand which was fired during the struggle on the ground with the officers. Lewis also

shot from the officers' guns, and the other was shot from Lewis's silver pistol.[7]  The bullet recovered which came from Lewis's gun traveled at an upward angle and was found in one of the storage facilities.

Iverson and Reitmeier called for backup.  Several other law enforcement officers, along with the fire department arrived.  Lewis was restrained and transported to McKennan Hospital for medical attention to his gunshot wound.

Lewis's storage shed and the black pick-up were later searched pursuant to search warrants. The searches yielded ammunition, several stolen weapons, an illegally altered shot gun, and information indicating that the pick-up was also stolen.  Lewis was indicted on thirteen felony charges as described above.  Other facts will be developed as they are deemed necessary to Lewis's specific § 2254 claims.

## PRELIMINARY MATTERS

### 1.    Lewis's Motion for Appointment of Counsel (Doc. 19)

Although South Dakota law provides for court-appointed counsel for indigent prisoners  in state habeas proceedings as a matter of statutory  right (*see* SDCL § 21-27-4) this federal habeas corpus matter is pending pursuant to 28 U.S.C. § 2254.  "There is no recognized constitutional right under the Sixth Amendment for the appointment of counsel in habeas corpus cases." *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994).  Because a habeas action is civil in nature, the Sixth Amendment right to counsel applicable in criminal proceedings does not apply.  *Id.*

---

had a satchel around his neck containing methamphetamine.  Also found on his person were two knives, spare ammunition, and an "alligator clip" attached to the inside of his underwear which held a functioning handcuff key.  Gunshot residue was found on Lewis's right palm.

[7]It was later discovered the silver pistol Lewis was carrying was a Smith and Wesson Walther .380 automatic pistol that had been stolen from East Side Pawn Shop in Sioux Falls.  TT at 235.  The serial number on the pistol is 2428 AAA.  *Id.  See also* TT 289-90.

The statutory basis for the appointment of counsel in a federal habeas case is found at 18 U.S.C. § 3006A(a)(2)(B) and Rules 6(a) & 8( c), Rules Governing Section 2254 Cases in United States District Courts, 28 U.S.C. foll. § 2254. Those statutes provide in relevant part:

**18 U.S.C. § 3006A(a)(2)(B):**

> (2)     Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who–
> **
> (B) is seeking relief under section 2241, 2254, or 2255 of title 28.

**Rule 6(a):**
If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

**Rule 8( c):**
If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A. . . . These rules do not limit the appointment of counsel under § 3006A at any stage of the proceeding.

The appointment of counsel in a habeas case is discretionary when no evidentiary hearing is necessary. *Hoggard*, 29 F.3d at 471 (citations omitted). In this case, no evidentiary hearing is necessary, because the claims Lewis makes here are identical to those he made at the state court level in his direct appeal and his state habeas where evidentiary hearings were held. *See Thatsaphone*, 137 F.3d at 1045. Transcripts have been provided to the Court from those proceedings. Because (1) the issues are identical; (2) voluminous transcripts from the underlying proceedings are available for review; (3) the Court is limited by the AEDPA to deciding whether the South Dakota Supreme Court and/or the state habeas court decided Lewis's claims in a manner which resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law; and (4) no evidentiary hearing is necessary, the matter can be decided on the basis of the state court record. Counsel need not be appointed in this case.

"In exercising its discretion, the district court should consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors." *Hoggard*, 29 F.3d at 471. Most importantly, "where the issues involved can be properly resolved on the basis of the state court record, a district court does not abuse its discretion in denying a request for court-appointed counsel." *Id.* While the facts and issues are potentially complex, Lewis has demonstrated his ability to present them in a straightforward manner in his pro-se petition. Most importantly, the issues can be resolved on the basis of the extensive state court record which has been provided to this Court. For these reasons, Lewis's Motion for Appointment of Counsel (Doc. 19) is DENIED.

## ANALYSIS

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The federal courts are constrained, however by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions." *Osborne v. Purkett,* 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.C. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. *Id.* at 411, 120 S.C. at 1495. "Rather, that application must also be *unreasonable*." *Id.* (emphasis added).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. *Thatsaphone v. Weber*, 137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's

findings lacked even fair support in the record." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.C. 843, 850, 74 L.Ed.2d 646 (1983).

As a general rule, a petitioner seeking a writ of habeas corpus under § 2254 must first exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A). The doctrine of exhaustion requires "as a matter of comity, federal courts should not consider a claim in habeas corpus petition until after the state courts have had an opportunity to act." *Mellott v. Purkett*, 63 F.3d 781, 784 (8th Cir. 1995) *quoting, Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982). "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001) (citation omitted). A strong presumption exists to require a prisoner to exhaust his state remedies, and the exhaustion requirement is waived "only in rare cases where exceptional circumstances of peculiar urgency are shown to exist." *Mellott*, 63 F.3d at 785.

The Petitioner bears the burden to show all available state remedies have been exhausted, or that exceptional circumstances exist which warrant waiver of exhaustion. *Carmichael v. White,* 163 F.3d 1044, 1045 (8th Cir. 1998). The federal courts' review of state courts decisions is limited in another way: "the law of this circuit requires that an applicant for a writ of habeas corpus refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue in state court" before it will evaluate a claim. *Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004) (citations omitted, punctuation altered). A petitioner's failure to exhaust in the state courts a claim which does not state a federal constitutional claim, cognizable in federal habeas proceedings, does "not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal constitution." *Martin v. Solem*, 801 F.2d 324, 331 (8th Cir. 1986) (citations omitted). *See also Hall v. Iowa*, 705 F.2d 283, 286 (8th Cir. 1983) ("Nonexhausted state claims included in a federal habeas petition and having no constitutional relevance should not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal Constitution.").

A federal court may not adjudicate the merits of a habeas petition which contains both exhausted and unexhausted claims (a "mixed" petition). *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982). The AEDPA one year statute of limitations, however, often results in claims which are time-barred after being dismissed without prejudice in federal court for failure to exhaust. A "stay and abeyance" procedure may be appropriate if a petitioner presents a petition "mixed" with exhausted and unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 1535 (2005). No stay and abeyance is necessary, however, if the unexhausted claims are "plainly meritless." *Id.;* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Finally, when it is obvious a federal habeas petitioner's unexhausted claims would be procedurally barred in state court due to a state-law procedural default, a District Court may forego needless 'judicial ping-pong' and treat those claims now barred by state law as providing no basis for federal habeas relief. The unexhausted claims should be treated as if procedurally defaulted. A petition should be denied with prejudice if there are no state remedies left to exhaust and all of the claims are either meritless or procedurally defaulted. *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007).

South Dakota law provides that a habeas petitioner must raise all potential grounds for habeas relief in his first state habeas petition. SDCL § 21-27-16.1 provides:

**21-27-16.1 Waiver of grounds for relief not raised in application.**
All grounds for relief available to petitioner under this chapter shall be raised in his original, supplemental or amended application. Any ground not raised, finally adjudicated or knowingly and understandingly waived in the proceedings resulting in his conviction or sentence or in any other proceeding that the applicant has taken to secure relief from his conviction, or sentence, may not be the basis for a subsequent application, unless the court finds ground for relief asserted which for reasonable cause were omitted or inadequately raised in the original, supplemental or amended application.

Procedural default of a claim under state law constitutes an adequate and independent state law ground that precludes federal review unless the prisoner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claim will result in a fundamental

miscarriage of justice. *Owen v. Weber*, 2010 WL 4117147 (D.S.D.) *citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Claims which have not been raised in either Petitioner's direct appeal or state habeas application are procedurally barred. *Whitepipe v .Weber*, 536 F.Supp.2d 1070, 1100 (D.S.D. 2007). "This procedural bar provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010) (citation omitted, punctuation altered). These general principles of law are applied in more detail to the grounds raised in Lewis's § 2254 habeas corpus petition:

### First Ground For Relief: Ineffective Assistance of Counsel

Although Lewis's several ineffective assistance claims are diverse the same principles of law apply to all of them. To establish an ineffective assistance of counsel claim, Petitioner must (1) establish counsel's representation fell below an objective standard of reasonableness and (2) show the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, Lewis must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.C. at 2052. The Court must begin by presuming trial counsel was effective, and strategic choices are entitled to great deference. *Boyd v. Minnesota*, 274 F.3d 497, 502 (8th Cir. 2001). Finally, the Eighth Circuit has noted federal review of ineffective assistance claims in § 2254 petitions is particularly deferential: "Our review under 28 U.S.C. § 2254 of a state court's application of *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel." *Nooner v. Norris*, 402 F.3d 801, 808 (8th Cir. 2005) *cert. den.* 126 S.Ct. 2037, 164 L.Ed.2d 794 (2006). It is with these standards in mind that Lewis's various ineffective assistance claims are reviewed.

### A. Failure to move to sever Counts 1-9 from Counts 10-13.

Lewis raised this claim in his state habeas petition. Counts 1-9 of the Indictment relate to the charges involving the attempted murder of the two police officers, the assault on the officers, felony

while armed with a firearm charges, possession of controlled weapon and substance charges, and possession of the stolen pick-up. Counts 10-13 relate to the charges involving possession of the stolen firearms from Scheels, Ace Hardware, Eastside Pawn and Exchange Pawn Shop. Lewis asserts his counsel was ineffective for failing to move for severance of Counts 1-9 from Counts 10-13.

Lewis's trial counsel testified about this claim during the state habeas evidentiary hearing. Counsel testified he thought about filing a motion to sever the counts but did not do so because he thought the motion would be "frivolous" and a waste of time. HT at 57-58. Counsel believed the state would be able to present evidence that Lewis's motive for his behavior in attempting to shoot the officers was to conceal the stolen items in the storage locker. Therefore, counsel believed a motion to sever the counts pertaining to the attempted murder/assault from the grand theft counts would not have been fruitful. HT 60.

Judge Srstka cited *Strickland* in evaluating all of Lewis's ineffective assistance claims. *See* May 12, 2010 Memorandum Opinion and June 30, 2010 Findings of Fact and Conclusions of Law. Next, Judge Srstka cited the relevant criminal procedure statute (SDCL § 23A-6-23) which governs the joinder of related offenses.[8] Judge Srstka found that all of the charges in the Indictment in CR 04-810 were "based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Memorandum Opinion at p.5. He further found the facts and circumstances of all the charges were "interrelated." *Id.* The state's theory of the case was that Lewis intended to cause the death of the law enforcement officers to avoid apprehension with the stolen property. *Id.* The grand theft charges provided evidence of motive and intent for the attempted murder and assault charges, and the attempted murder and assault charges provided evidence Lewis was aware the property in his storage facility was stolen. Judge Srstka

---

[8]SDCL 23A-6-23 states:
Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

concluded that Lewis failed to show the prejudice prong of the *Strickland* standard because he failed to show that a motion to sever would have been successful. Memorandum Opinion at p.6, Finding of Fact No. 44, Conclusion of Law No. 30.

"The rules are to be liberally construed in favor of joinder." *United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011) (citations omitted). Multiple counts can be charged in a single indictment if the offenses are of the same or similar character, based on the same act or transaction, or constitute parts of a common scheme or plan. *Id.* Further, there is a strong presumption against severing properly joined counts. *Id.* There is no prejudice if evidence of one charge would have been admissible in the trial of the other. *Id.*

In considering ineffective assistance claims, the Court addresses not what is prudent or appropriate, but only what is "constitutionally compelled." *Whitmore v. Lockhart*, 8 F.3d 614, 631 (8th Cir. 1993) (citation omitted). Lewis must show more than his trial counsel's alleged error had "some conceivable effect on the outcome of the proceeding because not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. Further, failure to file a motion that has little chance of success fails to meet *Strickland's* deficient performance or prejudice requirements. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990).

The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

### B.   Failure to request removal of the firearms from the courtroom during the trial;

Lewis raised this claim in his state habeas petition. During the state habeas hearing, trial counsel testified that during the trial the stolen firearms that constituted evidence in the case were on a cart near the prosecutor's table for ease of access and presentation to the various witnesses. HT at

20, 62. During the trial defense counsel approached the bench and asked the judge that the guns be covered when they were not in direct use. HT 62. As a result, the guns were covered with a tarp or blanket for the majority of the jury trial. HT 21. Nevertheless, Lewis asserts his trial counsel's failure to have the firearms removed from the courtroom prejudiced him and constituted ineffective assistance of counsel.

In his Memorandum Opinion, Judge Srstka noted that the firearms represented twenty out of the ninety-five exhibits received into evidence during Lewis's criminal trial. Memorandum Opinion at 6. Six of the witnesses who testified were victims of the grand theft charges. In addition to the grand theft victims, the law enforcement officers testified about the seeing or recovering the firearms at the scene of the crime and the ballistics expert also testified about the firearms. Judge Srstka concluded:

> The firearms were clearly part of the evidence at trial and had probative value. Their mere presence in the courtroom does not cause prejudice to Lewis. ... The trial was three days and the firearms were legitimately needed for use with witnesses for most of the trial. Lewis has not shown that his trial counsel's representation was defect[ive] or that he was prejudiced by the way the firearms were handled during the trial.

Memorandum Opinion, p. 7. *See also* Finding of Fact No. 51, Conclusion of Law No. 32.

On habeas review "evidentiary errors are only relevant to the extent that presentation or admission of particular proof infringed on a specific constitutional protection or was so prejudicial as to deny due process. Only evidentiary errors that are so grossly prejudicial that they fatally infect the entire trial, preventing it from being fundamentally fair, will justify habeas corpus relief." *Henderson v. Norris*, 118 F.3d 1283, 1286 (8th Cir. 1997). Further, "a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials." *Canon v. Lockhart*, 850 F.2d 437, 439 (8th Cir. 1988) *quoting Brown v. United States*, 411 U.S. 223, 231-32, 93 S.Ct. 1565-1570-71, 36 L.Ed.2d 208 (1973) (other citations omitted, punctuation altered).

Lewis has not articulated how the mere presence of relevant evidence, sitting on a cart and covered with a tarp while not being used for the testimony of witnesses was prejudicial to his trial.

Failure to ask that the firearms be removed from the courtroom did not constitute error, let alone error which was so grossly prejudicial that it infected the entire trial to the extent that it was fundamentally unfair. *Henderson v. Norris*, 118 F.3d 1283, 1286 (8th Cir. 1997). The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

### C.    Failure to prepare and send a juror questionnaire prior to trial;

Lewis raised this claim in his state habeas petition. During the state habeas hearing, trial counsel explained that when Lewis's case was originally set for trial only a few months after the crime occurred, counsel believed a pre-trial juror questionnaire would be helpful to get more information from the jurors and speed up the jury selection process. HT at 55.[9] There had been a lot of pre-trial publicity about the case. *Id.* When the trial was re-scheduled for September, 2004, however, trial counsel forgot to resubmit the questionnaire, so it was not sent to potential jurors for the September trial. *Id.* at 54-55. The prosecutor also testified at the state habeas hearing. He explained that the proposed questionnaire (which was received at the habeas hearing as Exhibit B) was a generic questionnaire. There was no reference to Lewis or the specific facts of his case. The questionnaire sought information about the jurors' education, employment history, general health, and previous jury duty. HT at 133-34. The proposed questionnaire contained many of the same questions typically asked during voir dire by both the prosecution and the defense, and questions that were already contained on the questionnaire jurors routinely completed when selected for jury duty. HT at 135.

Voir dire from Lewis's criminal trial was transcribed. TT Volume 1, pp. 7-131. The voir dire conducted by defense counsel and the prosecution was quite thorough and contained most, if not all of the information that would have been gleaned from the proposed questionnaire. Likewise, Judge Srstka noted that of the thirty-eight jurors who were questioned, only twelve had any memory of the

---

[9]The crime occurred in February, 2004. Trial was originally set for June, 2004 but was eventually re-set for September, 2004.

pre-trial media coverage of the case.   Those who remembered pre-trial media coverage had only a vague recollection which they indicated would not influence their service.   Memorandum Opinion at 7.   Judge Srstka concluded:

> A special juror questionnaire is not required in all cases. . . the jury pool did not include many people who even remembered the media coverage of the case.  Lewis has not established prejudice from not submitting the special juror questionnaire.

Memorandum Opinion at 7.  Finding of Fact Nos. 75, Conclusion of Law No. 33.

The determinative inquiry regarding pretrial publicity is not the amount of publicity but the effect of the publicity on the prospective jurors.  *Cox v. Norris*, 133 F.3d 565, 570 (8th Cir. 1998). Jurors need not be completely ignorant of the facts and issues surrounding the case; it is sufficient if they can lay aside their impressions or opinions and render a verdict based on the evidence presented in court.  *Id.*  Most importantly:

> As a federal court conducting habeas corpus review, we must defer to the state trial court's determination that the jury was not prejudiced by pretrial publicity.  This determination is essentially a factual conclusion entitled to a presumption of correctness unless the state court hearing was procedurally defective or unless the federal court, on considering the record as a whole concludes that the factual determination is not fairly supported.  Thus, the determination can only be overturned for 'manifest error.'

*Cox, id.* at 570.

Judge Srstka considered Lewis's claim regarding prejudice caused by trial counsel's failure to procure a special jury questionnaire.  Judge Srstka determined, however, that Lewis failed to prove he was prejudiced by pretrial publicity and therefore failed to show that a special jury questionnaire would have been helpful or necessary.  The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law.  It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

### D.   Failure to consult with or call an expert witness at trial;

Lewis raised this claim during his state habeas proceedings.  During the state proceedings, Lewis asserted his counsel was ineffective for failing to call a ballistics expert and a medical expert

(Dr. Kalda, the surgeon who treated Lewis's gunshot wounds). In his § 2254 Petition, Lewis articulates a claim based upon counsel's failure to consult with a ballistics expert "or any other expert to enable Petitioner to rebut the State's version of the case."

Walter Dandridge testified on behalf of the State at Lewis's criminal trial. TT 631-676. Dandridge was employed by the Bureau of Alcohol, Tobacco and Firearms (ATF) as a firearms tool and mark examiner. He worked out of the Washington, DC office. He received evidence in Lewis's case through the South Dakota ATF field office for testing. TT 638. Dandridge received and tested two firearms, one fired bullet, one magazine from one of the handguns and a number of cartridges (live rounds) of ammunition. He received a .22 caliber handgun and the .380 Walther for testing. Dandridge explained the purpose of his testing was to determine whether the nine millimeter bullet he received from the South Dakota ATF was fired from the .380 Walther gun that he also received from the South Dakota ATF. He determined the Walther was working properly and examined the expended bullet. TT 644. Then he tested the Walther by firing unused ammunition into a tank of water, retrieving the bullets, and comparing them to the bullet that was recovered from the crime scene. TT 645. They were the same. Dandridge concluded the bullet recovered from the storage unit was fired from the .380 Walther. TT 647-648. He also concluded that the trigger action on the weapon was consistent with the manufacturer's specifications and that the gun was in good condition. TT 657, 666. Dandridge looked at the other bullets recovered from either the scene or the stretcher upon which Mr. Lewis was placed after the shooting. Those bullets were a completely different caliber from the one he examined which came from the .380 Walther, but were consistent with having been fired from a Glock–the weapons issued to Sioux Falls Police. Another expert (Michael Martinez) who testified for the prosecution was a forensic examiner for a criminal laboratory in San Antonio, Texas. TT 613. He examined the gunshot residue collection kit which was taken from Lewis's right hand. Id. at 618. His findings were consistent with a single microscopic particle of gunshot residue on Lewis's right hand. Id. at 618-619.

No medical witnesses testified during the trial. However, the parties stipulated to the admission of a medical report which explained the location of the bullet wound which was inflicted

upon Mr. Lewis by the law enforcement officers. TT 682. The report indicated the bullet entered the lower-mid back and exited in the front of Lewis's body. TT 683.

Trial counsel testified during the state habeas hearing about his decision to forego hiring any experts. He recalls that his paralegal spoke to a ballistics expert, but they did not ultimately hire an expert or present expert testimony at trial. Counsel explained he did not disagree with Dandridge's testimony that he bullet found in the storage unit was fired from the .380 Walther. HT 51-52. Counsel explained his theory of the case was that Lewis did not have a motive or intent to kill the officers, and a ballistics expert would not have been particularly helpful to prove or disprove that point.

Counsel explained the surgeon who treated Lewis had a very busy surgery schedule. HT 78. Because the trial moved more quickly than anticipated, the surgeon was having difficulty rearranging his schedule to testify earlier than expected. *Id.* More importantly, trial counsel expected the surgeon to testify consistently with the ambulance report which suggested Lewis had been shot from the back. When counsel spoke with the surgeon the evening before he was expected to testify, however, the surgeon indicated he would not support the information on the report. *Id.* at 77-78. In lieu of the surgeon's testimony the parties agreed to stipulate to the admission of the ambulance report into evidence. HT 79.

Judge Srstka considered Lewis's claims but found that counsel's failure to call an expert was not ineffective assistance because he failed to show the lack of expert testimony undermined confidence in the outcome of the case. Memorandum Opinion at p. 8. Findings of Fact Nos. 78-105. Although the state's gun experts established that the slug found in the storage unit matched the .380 Walther and that Lewis had gunshot residue on his right hand, these experts really added nothing much to the state's case because "based on the other evidence there was no real doubt that Lewis fired the Walther .380 handgun so he ought to have gunshot residue on his hand and the slug he fired did not hit either of the two police officers." Memorandum Opinion at p. 8. Further, Judge Srstka observed that Lewis maintained to his counsel that the police planted the .380 Walther and that he

never possessed it. A ballistics expert would have been of no assistance whatsoever in presenting that theory of defense. Finding of Fact No. 87. Judge Srstka further found that Lewis was not prejudiced by counsel's failure to call the surgeon to testify about the location of Lewis's bullet wound, because in hindsight, the medical report to which the state stipulated was more favorable than the surgeon's testimony would have been. Finding of Fact No. 100. Counsel's strategic decision to stipulate to the cold medical record, therefore, was not ineffective assistance of counsel. Memorandum Opinion at 9.

The state habeas court decided trial counsel's failure to hire or consult with an expert was a strategic decision which did not rise to the level of ineffective assistance of counsel. The court noted when the claimed error is failure to hire an expert, the Petitioner cannot prevail unless he shows lack of an expert rendered the verdict unreliable or his trial fundamentally unfair. Memorandum Opinion at p. 8. Conjecture or speculation that a defense expert may have had some conceivable effect on the outcome is not enough. *Id. See also* Finding of Fact Nos. 91-92 and 105.

While Lewis criticized trial counsel's failure to retain an expert, he did not support the criticism with any specific expert testimony or opinions which would have changed the outcome of his trial. *See Ashker v. Class,* 152 F.3d 863, 876 (8th Cir. 1998); *Ellefson v. Hopkins,* 5 F.3d 1149, 1150-51 (8th Cir. 1993)(trial counsel's strategy to forego calling expert and rely on cross-examination of prosecution expert deemed not ineffective assistance of counsel). *See also Wildman v. Johnson,* 261 F.3d 832, 839 (9th Cir. 2001) (petitioner failed to show ineffective assistance because he did not demonstrate how his case was prejudiced by not retaining an expert; "[petitioner] offered no evidence that an . . .expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice . . . speculating as to what [an] expert would say is not enough to establish prejudice.").[10] The state court's factual

---

[10]Lewis did not really even offer speculation. Neither Lewis nor any other witness testified at the state habeas hearing to explain what expert testimony should have been presented during Lewis's criminal trial. Nor was any purported expert report was received at the state habeas hearing. Lewis has offered nothing to prove that, if an expert had testified at his criminal trial, there would have been a reasonable probability that the outcome would have been different.

findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

### E. Agreeing to the release of Exhibit 1 (firearm) before appeals were complete;

Lewis raised this claim in his state habeas proceeding. Lewis claims his trial counsel should not have released the .380 Walther because it should have been available for further testing. During the habeas hearing, trial counsel admitted he stipulated to the release of the .380 Walther to its rightful owner three weeks after Lewis's criminal trial concluded. HT 73. Counsel explained that Lewis's claim (that the police planted the gun and that he never possessed the gun in the first place) gave counsel no reason to resist releasing the gun to its rightful owner. HT 105-106.

At the state habeas hearing, Lewis made no specific claims about what further testing he wished to perform on the .380 Walther. *See* HT 73. Judge Srstka noted that the slug recovered from the scene, the casing recovered from the scene, the test rounds fired by the ballistics expert (Dandridge) and photographs comparing the test rounds to the bullet recovered from the scene remain in evidence. Finding of Fact Nos. 106-111. Judge Srstka further found that Lewis made no showing that the gun could not be located upon proper showing that further testing is necessary. Finding of Fact No. 112. Judge Srstka rejected Lewis's state habeas claim because Lewis failed to articulate how he was prejudiced by the release of the .380 Walther. Memorandum Opinion at p. 9, Finding of Fact No. 113-114. Conclusion of Law No. 35.

In this proceeding, Lewis asserts further testing is necessary and the .380 Walther should not have been released to its rightful owner because he now believes he can show the shot which was fired could have been accidental, thereby negating his two attempted murder convictions. Lewis explains:

---

Since trial petitioner has discovered evidence that the pistol a Smith and Wesson Walther PPK/s was recalled because they discharge without the trigger being pulled or touched. Which would have bolstered [Petitioner's] defense of accidental discharge.

*See* § 2254 Petition, Ground I, p. 6. Lewis failed, however to present any testimony or evidence either to this court or during the state habeas proceedings that the .380 Walther which is the subject of his motion (EX 1 at the criminal trial) is prone to accidental discharge or is the subject of the recall to which he refers.[11] As such, his federal claim suffers from the same infirmity as did his state claim. To demonstrate prejudice, Lewis must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2052. The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

F.    **Failure to file a motion to suppress evidence regarding search of the storage unit or the taking of gun shot residue from Lewis's hands without a warrant;[12]**

Lewis raised these claims in his state habeas proceeding. Lewis asserts his trial counsel should have filed a motion to suppress the evidence discovered in the storage facility because the facility was searched before the warrant was issued. Trial counsel explained that he considered filing

---

[11]The recall to which Lewis refers is dated February 20, 2009. It applies to Walther PPK and PPK/s pistols manufactured between March 21, 2002 and February 2, 2009. The Serial Number of the weapon relevant to this case is 2428 AAA. TT 235. The recall applies only to weapons with specified serial numbers.

*See*
http://www.smith-wesson.com/webapp/wcs/stores/servlet/Category4_750001_750051_757981_-1_757978_757978_image. (Copy attached to this Report and Recommendation as EX A).

Although Lewis is correct that some Walther PPK/s pistols have been recalled, the serial number for the weapon relevant to this case does not appear on the list of recalled weapons.

[12]The incident occurred on February 2, 2004. The search warrants were obtained on February 3, 2004. TT 577. The extent of the pre-warrant searches of the vehicle and the storage unit are not entirely clear from the record.

a motion to suppress evidence, but he knew Lewis was on parole at the time of the incident. As a consequence of being on parole, Lewis had a "search and seizure clause"[13] so no warrant was required to search his property. HT 40.

At no stage of the proceedings has Lewis contended or presented any evidence that he was not on parole at the time of the incident or that his parole agreement did not subject him to search without a warrant or reasonable suspicion. The United States Supreme Court has explicitly upheld the constitutionality of warrantless, suspicionless parole searches. *Samson v. California*, 547 U.S. 843, 851, 126 S.Ct. 2193, 2199,165 L.Ed.2d 250 (2006). Any motion to suppress the warrantless search, therefore, would have been futile. The failure to file a futile motion does not constitute ineffective assistance of counsel. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990).

Lewis also asserts his trial counsel was ineffective for failing to file a motion to suppress the taking of a gunshot residue (GSR) sample from Lewis's hand immediately after the incident. South Dakota DCI Agent Jason Piercy testified that he obtained a GSR sample from Lewis while he was unconscious in the intensive care unit at McKennan hospital. TT 604. Ultimately, testing revealed one microscopic particle of GSR on Lewis's right palm. TT 618.

Clearly established federal law precludes Lewis's assertion that a warrant was required to obtain the GSR sample.

> Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few established and well-delineated exceptions. *Arizona v. Gant*, 556 U.S. ___, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009). Among the exceptions to the warrant requirement is a search incident to lawful arrest. A search incident to lawful arrest may lawfully extend to 'the arrestee's person an the area within his immediate control,' that is, 'the area into which an arrestee might reach in order to grab a weapon or evidentiary items.' *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This exception 'derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. *Gant*, 129 S.Ct. at 1716.

---

[13]HT 40.

*United States v. Perdoma*, 621 F.3d 745, 750 (8th Cir. 2010) citations omitted, punctuation altered). Even in the absence of arrest, the warrantless collection of evidence from a suspect's person is permitted if there is probable cause to believe the suspect has committed a crime and it is "necessary to preserve . . . highly evanescent evidence." *Cupp v. Murphy*, 412 U.S. 291, 296, 93 S.Ct. 2000, 2004, 36 L.Ed.2d 900 (1973). *Cupp* has consistently been applied to the collection of GSR without a warrant. *Long v. Beres*, 2013 WL 139342 (E.D. Va.); *United States v. Pettiford*, 295 F.Supp.2d 552 (D. Md. 2003); *United States v. Jones*, 215 F.3d 1322 (4th Cir. 2000); *United States v. Simmons*, 380 Fed. Appx. 323 (4th Cir. 2010).

In his Memorandum Opinion, Judge Srstka found that a motion to suppress evidence would not have been successful regarding either the evidence recovered from the storage unit or the GSR evidence. Memorandum Opinion at p. 10. Judge Srstka reasoned that because Lewis was on parole at the time of the incident, and because Lewis's parole agreement contained a search and seizure waiver, the officers were justified in searching his storage unit without first obtaining a warrant. Judge Srstka further reasoned that the same search and seizure waiver, coupled with the exigent circumstances presented, rendered it objectively reasonable to obtain a GSR sample without a warrant. Judge Srstka concluded it was not, therefore, ineffective assistance of counsel for Lewis's trial counsel to forego a motion to suppress evidence. Memorandum Opinion at p. 10.

The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

### G. Failure to spend adequate time meeting with Lewis before trial;

Lewis raised this claim during his state habeas proceedings. In his § 2254 Petition, Lewis asserts "Court Appointed counsel spent under ten hours in meeting with Petitioner pre-trial to prepare for jury trial." In his § 2254 Petition, Lewis does not elaborate on how trial counsel could have more effectively represented Lewis had counsel spent more pre-trial time meeting with him. In his state

habeas brief, (*See* State Habeas Exhibits, EX A)[14] Lewis asserted that had trial counsel spent more time with him, they could have discussed the benefit of Lewis taking the stand to testify about Lewis's state of mind at the time of the incident to defend against the attempted murder charges. Lewis did not testify at the state habeas hearing, however, to elaborate on this theory.

At the state habeas hearing, trial counsel testified that he met with Lewis five or six times before the jury trial, which he considered adequate. HT 83. His strategy was to show that Lewis did not intend to kill the police officers. HT 84. They talked about whether Lewis would testify and counsel believed they could show lack of intent without Lewis's testimony. *Id.* Lewis did not provide trial counsel with any defenses for the theft of the firearms possession of the stolen pick-up. HT 90. Lewis provided no explanation for the satchel of methamphetamine that was found around his neck or the shotgun in the truck. *Id.* He provided no explanation for the handcuff key attached to the inside of his underwear. HT 92. He provided no helpful information about why he assaulted Officer Reitmeier or fired the .380 Walther. The only information Lewis provided was his claim that the officers "planted" the .380 Walther on him. HT 91.[15] Although Lewis indicated he was not afraid to face cross-examination, trial counsel did not share Lewis's confidence about his ability to explain the stolen firearms, stolen pick-up, drugs, and handcuff key. HT 107.

Dave Nelson, one of the prosecuting attorneys, also testified at Lewis's state habeas hearings. Nelson was the State's Attorney for Minnehaha County at the time of Lewis's criminal trial and was the lead attorney throughout Lewis's 2004 trial. He considered the possibility that Lewis would testify in his own defense but thought it was "unlikely." HT 142. He thought it unlikely that Lewis would testify because he thought it would be very difficult to provide a legitimate explanation for how Lewis acquired such a large number of stolen firearms in addition to a stolen pick-up truck, other than

---

[14]In his state habeas brief, Lewis argued "there would be no conceivable reason to not have him testify" during his criminal trial. State Habeas EX A, at p. 20.

[15]Counsel believed that if he presented that story to a jury, any credibility Lewis might have would be lost. HT at 91. Counsel also indicated that if Lewis testified, evidence of his prior convictions would be allowed to impeach him. HT 107.

having stolen them. HT 142. He also thought it would be difficult to explain a package of methamphetamine that was literally hanging around Lewis's neck, and a handcuff key clipped to his underwear. *Id.* Nelson thought Lewis would be smart enough to figure out that it would be difficult for him to explain away all the circumstances of his case. HT 143. Finally, Judge Kean thoroughly questioned Lewis out of jury's presence during the jury trial. TT 680. The following conversation occurred between Judge Kean and Mr. Lewis:

| | |
|---|---|
| The Court: | Mr. Lewis, your attorney has indicated that you are not going to be testifying, is that correct: |
| Lewis: | Yes, your Honor. |
| The Court: | And that's your decision? |
| Lewis: | Yes, your Honor. |
| The Court: | And I will upon your request when we settle instructions give a special instruction to the jury that they cannot take that into consideration in arriving at their verdict on any of the counts. |
| Lewis: | Thank you, your honor. |
| The Court: | But you have had a chance to talk over this decision about not testifying with your attorney and attorneys, I guess? |
| Lewis: | Yes, your Honor. |
| The Court: | And you weighed the pros and cons of testifying versus not testifying? |
| Lewis: | Yes, your Honor. |
| The Court: | And it is your –then the decision was left to you to make, correct? |
| Lewis: | Yes, yes it was. |
| The Court: | So this is solely your decision? |
| Lewis: | Yes. |

TT at 680-81.

A criminal defendant has a constitutional right to testify in his or her own defense. *Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998). Given Judge Kean's above-cited on-the-record discussion with Lewis, there can be no serious question that Lewis knowingly and voluntarily waived his constitutional right. *El-Tabech v. Hopkins*, 997 F.2d 386, 389 (8th Cir. 1993) (habeas petitioner's conduct during criminal trial indicated waiver of right to testify). Lewis's dissatisfaction with his decision does not render his decision involuntary or unknowing. *Frey*, 151 F.3d at 898. Lewis asserts, however, that trial counsel's advice that he not testify was nevertheless ineffective.

Judge Srstka found Lewis failed to show that trial counsel's advice to refrain from testifying was unreasonable, or that it was not sound trial strategy and as such, failed to show prejudice because of insufficient time spent together before trial. Memorandum Opinion at 11. *See also* Finding of Fact No. 115-127, Conclusion of Law No. 36.

"[S]trategic choices of trial counsel are entitled to great deference." *Boyd v. Minnesota*, 274 F.3d 497, 502 (8th Cir. 2001) *quoting Strickland*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

### H. Failure to adequately investigate the charges which formed the basis for Lewis's habitual offender conviction;

Lewis raised this claim in his state habeas proceeding. Lewis was charged in a Part II Information of being a habitual offender. One of the charges that formed the basis of the Part II habitual offender charge was a DWI Third (felony) conviction. Lewis does not contend he was unrepresented by counsel for the DWI Third (felony) conviction, but rather that he was unrepresented by counsel for one of the DWI convictions which "qualified" his DWI Third conviction for felony status.[16] Lewis argues this potentially made the DWI Third (felony) ineligible to be used for the

---

[16]Pursuant to South Dakota law, in general if a person receives a DWI third conviction within ten years of his DWI second conviction, the DWI third conviction is considered a felony.

habitual offender enhancement. Lewis claims his trial counsel was ineffective for failing to further investigate his DWI Third (felony) conviction, and therefore for failing to challenge the habitual offender charge.

Trial counsel and the prosecutor testified about the habitual offender charge and the subject DWI Third (felony) conviction during the state habeas evidentiary hearing. Lewis did not. Trial counsel explained that the judges in Minnehaha County are very thorough in their arraignment and plea taking process. HT 109. Also, Pat Reipel[17] represented Lewis on the DWI Third (felony) conviction and trial counsel believed she would have thoroughly investigated the qualifying convictions. Trial counsel believed it "highly unlikely" there was a defect in the proceedings for the qualifying, unrepresented DWI. *Id.* Additionally, Lewis had considerable experience in the court system and trial counsel believed that even uncounseled, he would not have involuntarily pled guilty. HT 110. Prosecutor Nelson explained he could not think of a single case in Minnehaha at least since 1990 that a misdemeanor DWI case had been overturned because the *pro se* defendant who entered a guilty plea had not been properly advised of his right to counsel. HT 145.

Judge Srstka rejected Lewis's claim because Lewis failed to show he was denied his right to counsel when he entered a guilty plea to the qualifying DWI charge.[18] Memorandum Opinion at 12. Judge Srstka also found that trial counsel's determination that a challenge to the DWI Third (felony)

---

*See* SDCL § 32-23-4.1.

[17]Pat Reipel was, for a time, a Magistrate Judge in Minnehaha County and is now a Circuit Court Judge.

[18]Judge Srstka noted the DWI second charge in question was CR 91-4578. He also noted that Lewis appeared in Magistrate Court on November 7, 1991 before (then) Magistrate Judge Neiles. Lewis appeared pro se and entered a guilty plea at his first appearance. Judge Srstka observed that Lewis made no showing he'd been denied his right to counsel or that he had not been properly arraigned in CR 91-4578. Judge Srstka stated, "at that time, Lewis already had extensive prior experience with the criminal justice system so he was unlikely to proceed without counsel if he did not voluntarily decide to do so." Memorandum Opinion at 12. Lewis's previous criminal history is detailed on pp. 20-21 of the state's brief in the state habeas proceeding. *Lewis v. Weber*, Civ. 06-1650, Second Judicial Circuit, Minnehaha County, South Dakota.

conviction would not be successful was reasonable. As such, Judge Srstka determined that Lewis failed to show prejudice from trial counsel's failure to investigate the DWI third (felony) conviction which formed the basis for the habitual offender charge. Memorandum Opinion at 12, Findings of Fact Nos. 128-138, Conclusion of Law No. 37. Because Lewis made no showing the DWI Third (felony) conviction would have been ineligible for consideration on the habitual offender charge, he made no showing of prejudice. Memorandum Opinion at 12.

If a criminal defendant knowingly and intelligently waives his right to counsel in favor of representing himself, there is no constitutional infirmity in his conviction. *Powell v. Wyrick*, 744 F.2d 632, 635 (8th Cir. 1984). "In a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Iowa v. Tovar*, 124 S.Ct. 1379, 1390, 541 U.S. 77, 92, 158 L.Ed.2d 209 (2004). In a habeas proceeding, the federal courts are to apply a "strong presumption" of constitutional validity to state judicial proceedings. *Cuppett v. Duckworth*, 8 F.3d 1132, 1136 (10th Cir. 1993). The petitioner in *Cuppett,* as Lewis does, challenged the validity of a habitual defender enhancement based on his claim that a previous, underlying conviction was uncounseled. Cuppett, like Lewis, made no effort to show that his waiver of counsel in the underlying conviction was anything but knowing and voluntary. *Id.* at 1140 ("Cuppett has not only failed to meet this burden, he has not even attempted to meet it."). The *Cuppett* court further noted:

> A second presumption operates against [petitioner's] claim. Under 28 U.S.C. § 2254(d), factual findings of a state court are presumed to be correct in a federal habeas proceeding, if the findings are made after a hearing on the merits, and are fairly supported by the record. This presumption applies to the factual findings of the state appellate courts as well as state trial courts. We have held that the determination of knowing and intelligent waiver is a factual inquiry. We therefore conclude that factual findings of a state court on questions of whether a defendant understood his or her rights and knowingly and intelligently waived them are entitled to the § 2254(d) presumption. As recounted above, the . . .state courts found, as a factual matter, that [petitioner] had waived his right to counsel at the [state court] proceeding. That finding, made after an evidentiary hearing, was fairly supported, 28 U.S.C. § 2254(d)(8) by the record . . .Thus, the burden rests upon [petitioner] to establish by convincing evidence that the factual determination by the state court was erroneous. 28 U.S.C. §2254(d). [Petitioner] has failed to come forward with any such evidence.

*Cuppett, id.* at 1141 (citations omitted, punctuation altered).

Lewis offered no evidence that a challenge to his habitual offender charge, based on an underlying uncounseled conviction, would have been successful. As such, he failed to show that his counsel's failure to investigate the charges which formed the basis of his habitual offender conviction caused him any prejudice. The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

I. **Failure to raise more issues on appeal and failure to timely file a reply brief on appeal;**

Lewis raised this issue in his state habeas proceedings. Lewis asserts his trial counsel raised only one issue on direct appeal (insufficiency of the evidence). His trial counsel attempted to file *a Korth* brief, but the South Dakota Supreme Court rejected it for improper form. Additionally, the reply brief was rejected because it was filed past the South Dakota Supreme Court's filing deadline.

Trial counsel testified during that state evidentiary hearing about the issue raised on direct appeal and the missed reply brief deadline. HT 87-88. Counsel stated he and Lewis did not agree about the issues that should be raised on direct appeal. Counsel believed the only issue with any possible merit was whether there was sufficient evidence to support the conviction. Lewis, however, wanted to "bring up a bunch of other issues." *Id.* To resolve the problem, counsel attempted to allow Lewis to file a *Korth* brief.[19] Counsel was informed by the South Dakota Supreme Court, however,

---

[19]"In *State v. Korth*, 2002 SD 101, 650 N.W.2d 528, this Court adopted an alternative briefing procedure for criminal appeals where court appointed counsel identifies no arguably meritorious issues for appeal. This procedure requires bifurcated briefing in which counsel indicates in Section A of the brief that he has not identified any arguably meritorious issues for appeal and submits, in Section B of the brief, any claim of error requested by the client." *People ex. rel. South Dakota Dept. Of Social Services in the Interests of AD and DSY*, 678 N.W.2d 594, 597 (S.D. 2004).

that it is improper to file a *Korth* brief if counsel believes there are meritorious issues in the case. HT 88.[20]  Counsel conceded he missed the filing deadline for the reply brief. HT 88. Although counsel explained that the reply brief was rejected, he indicated it contained no new arguments but rather reiterated the points already contained in the original brief. HT 89. Counsel indicated the reply brief "had absolutely nothing to add" to what he'd already argued in the opening brief. HT 111.

Lewis did not testify at the state habeas evidentiary hearing to explain what other issues he believed should have been raised in his appellate brief on direct appeal. Neither did he explain how the failure to file a reply brief prejudiced his appeal.  Judge Srstka rejected this portion of Lewis's ineffective assistance claim. Judge Srstka decided that because a *Korth* brief would not have been appropriate, Lewis did not show that counsel's failure to file one caused Lewis any prejudice. Further, Lewis never specified what other meritorious issues he believed counsel should have presented in the direct appeal brief. Finally, Judge Srstka rejected the portion of Lewis's ineffective assistance claim premised on the untimely reply brief, because Lewis failed to identify any prejudice caused by the lack of a reply brief. *See* Memorandum Opinion at p. 12-13. *See also* Finding of Fact Nos. 139-153, Conclusion of Law No. 22-23, 38-39.

In this § 2254 Petition, Lewis again alleges he requested additional issues to be raised on direct appeal and that the *Korth* brief was in improper form. But neither in his Petition nor his Traverse does Lewis articulate what additional claims should have been presented. A claim on a § 2254 habeas corpus petition may be dismissed without a hearing if it is "based solely on vague, conclusory or palpably incredible allegations or unsupported allegations." *Brown v. Lockhart*, 781 F.2d 654, 656 (8th Cir. 1986) *quoting Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962).

---

[20]"[T]here should be no issues the attorney believes are meritorious or 'attorney issues' in a proper *Korth* brief.  This is only logical because, if there are issues in the case that counsel believes are meritorious, counsel should obviously abandon the *Korth* procedure and brief and argue those issues as in any other criminal appeal." *State v. Arabie*, 663 N.W.2d 250, 254 (S.D. 2003).

The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Lewis's First Claim for Relief be DENIED.

**Second Ground For Relief: Cruel and unusual sentencing–disproportionate sentencing.**

Lewis raised this ground for relief in his amended state habeas petition. Judge Srstka considered, but rejected Lewis's claim that his sentence of two concurrent life sentences, followed by a term of 145 years, constituted cruel and unusual punishment in violation of the Eighth Amendment. Memorandum Opinion at 13-15. Finding of Fact Nos. 154-172, Conclusion of Law Nos. 24-29, 40-41.

Judge Srstka noted the deference required to the legislative authority to determine appropriate sentences for crimes. Memorandum Opinion at 13. Sentences within the statutory maximum are "seldom" disturbed. *Id.* Sentences not deemed grossly disproportionate to the crime committed are not subject to further review. *Id.* Judge Srstka reviewed the facts underlying Lewis's sentencing, including Lewis's long criminal history and that because he was a habitual offender, Judge Kean had no choice under South Dakota law but to sentence him to life without parole for the two attempted murder convictions. Memorandum Opinion at 14. Judge Srstka concluded:

> The sentences imposed were within the statutory maximums as provided by the Legislature. The sentences do not appear to be grossly disproportionate given the facts of the offenses, Lewis' age, criminal history, lack of remorse or acceptance of responsibility, and his lack of potential for rehabilitation. Therefore, it is not necessary to engage in an intra- and inter- jurisdictional analysis. Lewis' sentences were not cruel and unusual punishment in violation of the Eighth Amendment.

Memorandum Opinion at 15.

The Eighth Amendment states "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." To prove his sentence violates the Constitution, Lewis must show it is grossly disproportionate to the crime. *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003). The United States Supreme Court has

cautioned the grossly disproportionate principle is applicable only in the "exceedingly rare and extreme" case. *Id.* 538 U.S. at 73, 123 S.Ct. at 1173 (citations omitted, punctuation altered). *See also Ramos v. Weber*, 303 F.3d 934, 937 (8th Cir. 2002). Outside the context of capital punishment, "successful challenges to the proportionality of particular sentences are exceedingly rare." *United States v. Paton*, 535 F.3d 829, 837 (8th Cir. 2008) (citations omitted).

To determine whether a sentence is grossly disproportionate, the gravity of the offense is compared to the harshness of the penalty imposed. *Ramos, id.* at 937. To evaluate the gravity of the offense, the Court examines the harm caused or threatened to the victim or society and the defendant's culpability or degree of involvement. *Id.* Culpability is determined by the Petitioner's intent and motive in committing the crime. *Id.*

Before Lewis spoke during the sentencing hearing, prosecutor Nelson recited a litany of Lewis's previous crimes. ST 7-12. Nelson characterized Lewis as "probably the most prolific burglar, thief, drug offender, attacker of police officers, and in combination with his drug abuse and controlled weapons as has come across the desk of the State's Attorney's office for as long as I can remember. I can't think of a person who in a non-homicide case is more deserving of several life sentences than this defendant. I can't think of a one." ST at 12.

When given a chance to speak at his sentencing hearing, Lewis offered only his reiteration that he disagreed with his counsel's decision to forego hiring an expert to prove that the officers shot him from behind, that he'd been "harassed" by the officers the night of the incident, and that he hoped to get some justice on appeal. ST 13-14. Judge Kean had the following to say during Lewis's sentencing hearing:

> Well, Mr. Lewis, you had a jury trial on the underlying charges, and first of all, the people found you guilty, and then you had a jury trial on the habitual offender information and 12 more people found that you are a habitual offender. So 24 people have looked at this case and both found you guilty of 13 counts of crimes from attempted murder, to charges involving firearms, to charges of grand theft. The second jury determined that you have three prior felonies, and Mr. Lewis, the thing that you never ever quite bring up and I was wondering if you were going to do it, and

you're not so I am. You've been at this lifestyle for about 20 years. Starting in 1984 and I think that was your first conviction. That one was too old for the State to use in order to enhance the penalty, but you have had three other felonies since that time, and this jury finds that you have committed 13 more offenses, although I think that Counts V and VI, and the State and I disagree on this point, and I think that this is an enhancement statute, and we'll speak to that later again. You started off your career with burglary and grand theft charges 20 years ago. I listened to your comments today and the police did this and the police did that and nothing happened to you that should be taken into question that night of your conduct. You've been averaging about a felony a year for the last 20 years. Since 1984 it's about one felony a year, and frankly, Mr. Lewis, I think you deserve everything that I'm going to give you for a sentence this afternoon.

This is not the "rare case" in which the threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. *United States v. Paton*, 535 F.3d 829, 838 (8th Cir. 2008) (citing *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108)(2003); *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The state courts' factual findings are fairly supported by the record, and they did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that Lewis's Second Claim for Relief be DENIED.

### Third Ground for Relief: Violation of the Sixth Amendment right to Counsel by the State's interference with Lewis's ability to hire counsel of his own choice.

Lewis attempted to raise this argument during his state habeas proceedings. Lewis asserted Minnehaha County seized assets from his storage facility, including items which were not stolen and were not evidence in his criminal trial. He further asserted he was not allowed access to the items. The State of South Dakota ultimately auctioned Lewis's property after his criminal trial to pay his court appointed attorney fees. Lewis asserted that by seizing his personal property, the State violated his Sixth Amendment right to hire counsel of his choice. *See* state habeas EX A, HT p. 7-11. The forfeiture of Lewis's property was the subject of a separate civil case. *See Minnehaha County v. John Stevenson Lewis*, Civ. No. 05-783, Second Judicial Circuit, Minnehaha County, South Dakota. Lewis's assets were auctioned for $13,382.03. *Id.*

The State argued that Lewis's claim was barred by res judicata and not a proper habeas corpus claim. HT 9. Judge Srstka agreed, and summarily denied it. HT 11. After Judge Srstka denied Lewis's state habeas petition in its entirety, Lewis made a Motion for Certificate of Probable Cause. Lewis did not raise this issue in his Motion for Certificate of Probable Cause. *See* Doc. 1-1, p. 117-118. Judge Kean denied the motion. Next, Lewis made a motion before the South Dakota Supreme Court for a Certificate of Probable Cause. Lewis did not raise this issue in the motion before the South Dakota Supreme Court. *Id.* p. 129-133. When Lewis did not raise this issue in his Motion for Certificate of Probable Cause, he failed to give South Dakota "one full opportunity to resolve any constitutional issue by invoking one complete round of [South Dakota's] established appellate review process." *Randolph v. Kemna*, 276 F.3d 401, 403 (8th Cir. 2002) *quoting O'Sullivan v. Boerkel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). "A state prisoner is not required to pursue extraordinary remedies outside the standard review process, but he must seek the discretionary review of the state supreme court when that review is part of the ordinary and established appellate review process in that state." *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001) (punctuation altered). Failure to properly exhaust in accordance with state procedure results in procedural default of the prisoner's claims. *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010).

The South Dakota courts have not had the opportunity to decide this Sixth Amendment claim on the merits because Lewis failed to present it to the South Dakota Supreme Court in a procedurally correct manner. This issue, therefore, is procedurally defaulted.

This issue is also barred by the AEDPA one year statute of limitations. On November 9, 2005, the South Dakota Supreme Court affirmed Lewis's conviction. *State v. Lewis*, 706 N.W.2d 252 (S.D. 2005). On May 12, 2006, Lewis filed a *pro se* Application for Writ of Habeas Corpus in state court. The South Dakota Supreme Court denied Lewis's Motion for Certificate of Probable Cause on December 10, 2010. Lewis filed his federal § 2254 Petition on April 29, 2011.

This claim was filed on September 23, 2011, one hundred and forty-seven days after Lewis originally filed his § 2254 Petition. 28 U.S.C. § 2244(d) provides:

**(1)** A 1-year statute of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

    **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such by State action;

    **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Lewis's instant federal § 2254 habeas Petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), which imposes a one-year statute of limitations for filing federal habeas petitions. 28 U.S.C. § 2244(d)(1); *Beery v. Ault*, 312 F.3d 948, 949 (8th Cir. 2003). The federal limitations period runs from the date on which Lewis's state judgment became final by the conclusion of direct review or the expiration of time for seeking direct review. *Id.* By Supreme Court rule, a petitioner has 90 days from the date of entry of judgment in a state court of last resort to petition for certiorari. *Id.*, Sup. Ct. R. 13. The statute of limitations is tolled, however, while "a properly filed

application for State post-conviction review is pending." *Id.; § 2244(d)(2). See generally, Painter v. State of Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001) ("a review of our cases makes clear, however, that the time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period."). *See also Curtiss v. Mount Pleasant Correctional Facility*, 338 F.3d 851, 853 (rejecting the suggestion that the federal filing deadline had not expired because state petition was timely filed according to state law, and federal petition was filed within one year after state statute of limitations had expired); *Jackson v. Ault*, 452 F.3d 734, 735 (8th Cir. 2006) ("It does not matter that [petitioner's] . . .state post conviction relief application was timely filed under [state] law. The one year AEDPA time limit for federal habeas filing cannot be tolled after it has expired.").

The South Dakota Supreme Court affirmed Lewis's conviction on November 9, 2005. His conviction became final ninety days later, on February 7, 2006. He did not file his state habeas action until May 12, 2006. Ninety-four days elapsed between the date Lewis's conviction became final and the date he filed his state habeas petition. His state habeas action remained pending until December 10, 2010, when the South Dakota Supreme Court denied a Certificate of Probable Cause. Lewis filed his federal habeas petition one hundred-forty days later, on April 29, 2011. Therefore, at the time he filed his federal habeas petition, 234 out of the 365 day statute of limitations had elapsed. In other words, 131 days remained. The statute of limitations for any further claims expired, therefore, 131 days from April 29, 2011, or on September 7, 2011, before Lewis filed this claim on September 23, 2011. "Those claims are untimely unless they relate back to the filing date of the original claims under Rule 15(c)(2) of the Federal Rules of Civil Procedure. An amended pleading relates back if the claims asserted arose out of the same conduct, transaction, or occurrence." *McKay v. Purkett*, 255 F.3d 660 (8th Cir. 2001). Lewis's claim regarding the seized property do not relate back because they do not arise out of the same conduct, transaction or occurrence as any of his original claims.[21]

---

[21]The Eighth Circuit has clarified it is not enough that the claim arises out of the habeas petitioner's criminal trial, conviction or sentence. *United States v. Hernandez*, 436 F.3d 851, 857 (8th Cir. 2006). Instead, "in order for the claims in an amended motion to relate back . . they must be of the same time and type as those in the original motion such that they arise from the same core set of operative facts." *Id.* (punctuation altered).

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Lewis's Third Claim for Relief be DENIED.

## CONCLUSION, ORDER and RECOMMENDATION

Lewis's habeas corpus claims were adjudicated on the merits in state court on direct appeal and in a habeas corpus action where he was represented by court-appointed counsel. Lewis's Third Claim for Relief, although not adjudicated on the merits, is procedurally barred and untimely. Lewis has failed to satisfy his burden of rebutting the presumption of correctness of the state courts' adjudication by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The state courts' determination was not contrary to, nor did it involve an unreasonable application of clearly established federal law *(Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), and was a reasonable determination of the facts in light of the evidence presented in the state habeas proceeding. *See* 28 U.S.C. § 2254(d).

Lewis has failed to make a "substantial showing of the denial of a constitutional right." A certificate of appealability should not be issued in Lewis's case. 28 U.S.C. § 2253(c)(2). Although 28 U.S.C. § 2253(c)(2) has been found to be "only a modest standard," Lewis has not shown that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement or to proceed further.'" *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (citations omitted).

Therefore, it is ORDERED:

1) That Petitioner's Motion for Appointment of Counsel (Doc. 19) is DENIED and it is respectfully RECOMMENDED to the District Court that:

(2) Respondent's Request to to Dismiss the Petition without an evidentiary hearing (Doc. 7) be GRANTED;

(3) A Certificate of Appealability should not be issued;

(4) Lewis's Application for Writ of Habeas Corpus (Doc. 1 ) and all supplements and amendments thereto be DISMISSED with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)

*Nash v. Black,* 781 F.2d 665 (8th Cir. 1986)

Dated this **26** day of June, 2013.

BY THE COURT:

John E. Simko
United States Magistrate Judge